**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CYNTHIA NELSON, et al., | : | CIVIL ACTION NO. 08-5426 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| XACTA 3000 INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COOPER, District Judge**

Plaintiffs, Cynthia Nelson and Barbara L. Kochamba
(collectively, "Plaintiffs"), commenced this putative class
action against defendants, Xacta 3000, Inc. ("Xacta 3000"), and
Idea Village Products Corp. ("Idea Village") (collectively,
"Defendants"), alleging violations of the New Jersey Consumer
Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq. (Count I), breach
of implied warranty (Count II), and unjust enrichment (Count
III). (Dkt. entry no. 32, First Am. Class Action Compl. ("Am.
Compl.").)  Plaintiffs contend that the Court has subject matter
jurisdiction under the Class Action Fairness Act, 28 U.S.C. §
1332(d).  (Am. Compl. at ¶ 11.)

Idea Village now moves to dismiss the claims asserted
against it for failure to state a claim upon which relief can be
granted, pursuant to Federal Rule of Civil Procedure ("Rule")
12(b)(6).  (Dkt. entry no. 42, Mot. to Dismiss.)  The Court
decides the motion on the submissions of the parties, without

oral argument, pursuant to Rule 78.  For the reasons stated herein, the Court will grant Idea Village's motion.

## BACKGROUND

The facts giving rise to this action are recited in the First Amended Class Action Complaint as follows.  Nelson is a citizen of California; Kochamba is a citizen of Wisconsin; Xacta 3000 and Idea Village are New Jersey corporations with their principal places of business in New Jersey.  (Am. Compl. at ¶¶ 6-9.)  Xacta 3000 markets a product called "Kinoki Detox Foot Pads" ("Kinoki Pads") and sells the same through its website and using television "infomercials."  (Id. at ¶¶ 1, 6, 8.)  Idea Village is a distributor of retail products specializing in products branded "As Seen on TV," and distributes the Kinoki Pads to retail stores.  (Id. at ¶ 9.)  Kinoki Pads "purport to provide health benefits to consumers who use them (by taping them to the soles of their feet overnight), including 'assisting your body in the removal of heavy metals, metabolic wastes, toxins, microscopic parasites, mucous, chemicals, and cellulite.'"  (Id. at ¶ 1.)

Nelson alleges that she saw a Kinoki Pads "infomercial" on television and was convinced to purchase the product, which she did by accessing Xacta 3000's website, www.buykinoki.com, on March 27, 2008.  (Id. at ¶ 6.)  Nelson "used the Kinoki Pads for ten to twelve days but, because the Pads' dark color never turned clear, as advertised on the TV infomercial," she stopped using

2

them.  (<u>Id.</u>)  Nelson seeks to represent a class of similarly situated persons that Plaintiffs would define as "All persons who purchased Kinoki Pads within the United States, not for resale or assignment, from XACTA 3000" ("XACTA 3000 Class").  (<u>Id.</u> at ¶ 26.)

Kochamba alleges that she came across a four-by-four foot display of Kinoki Pads at a local Wal-Mart store on September 29, 2008, and was convinced by the display and "packaging advertisement" to purchase the product.  (<u>Id.</u> at ¶ 7.)  Kochamba used the Kinoki Pads for approximately four days, until she noticed that the Kinoki Pads changed color when wet, "in the same manner as when she applied the product to her feet at night and removed as directed the next morning."  (<u>Id.</u>)  Plaintiffs allege that the Kinoki Pads purchased by Kochamba "were distributed to Wal-Mart by Idea Village, with the intent that consumers, such as Kochamba, would rely upon the representations made on the packaging itself, as well as the advertising campaign orchestrated and implemented by XACTA 3000. . . ."  (<u>Id.</u>)  Kochamba seeks to represent a class Plaintiffs would define as "All persons who purchased Kinoki Pads within the United States, not for resale or assignment, from a retail store" ("Idea Village Class").  (<u>Id.</u> at ¶ 26.)

Plaintiffs allege that Xacta 3000 "has marketed Kinoki Pads utilizing numerous false and misleading representations and statements, including the following:

3

- Use of Kinoki Pads is the "natural way to assist your body in the removal of heavy metals, metabolic wastes, toxins, microscopic parasites, mucous, chemicals, cellulite and much more;"
- Kinoki Pads provide the "one-two punch of powerful detox ingredients in conjunction with tourmaline, a mineral that generates negative ions, to improve your overall health and well-being;"
- Kinoki Pads "use all-natural tree extracts and negative ions to rid your body of toxins;"
- Kinoki Pads "absorb toxins released by the body;"
- Kinoki Pads "relieve burdens on the immune system;"
- Kinoki Pads "assist in the natural cleansing of the lymphatic system;"
- Kinoki Pads "support normal blood circulation;"
- Kinoki Pads "boost your energy level;"
- Kinoki Pads "improve your Health and Wellness;"
- Use of Kinoki Pads "is the all-natural way to collect harmful toxins from your body while you sleep . . . ;"
- [A]n "independent study" shows that Kinoki™ Detox Kinoki Pads eliminate toxins in the body;
- "Lab results" prove that Kinoki Pads aid in the elimination of toxins;
- Kinoki Pads are perfect for "Diabetes – Arthritis – Fatigue – High Blood Pressure – Insomnia – Weight Loss;" and
- Kinoki Pads are "FDA registered."

(Id. at ¶ 14.)  Plaintiffs further contend that "[a]ll of these representations are false.  In fact, the Kinoki Pads have no effect on the removal of toxins from the body, nor do they provide the other health benefits promised."  (Id. at ¶ 15.)

Plaintiffs would impute Xacta 3000's representations to Idea Village on the basis that "Idea Village's name appears prominently on the product's packaging, which contains many of the same misleading themes and representations made in the

4

advertising campaigns implemented by XACTA 3000" and because Idea Village "contracted [with retailers] to place Kinoki Pads in highly visible areas of national retail stores in their 'As Seen on TV' product sections." (Id. at ¶ 16.)  However, the Amended Complaint does not specify any content allegedly on the product packaging.

Idea Village now moves to dismiss Plaintiffs' NJCFA, breach of implied warranty, and unjust enrichment claims asserted against it.  (Dkt. entry no. 42, Mot. to Dismiss.)  Idea Village also argues that the Amended Complaint, insofar as it is asserted against it, should be dismissed without leave to amend "because Plaintiffs fail to allege, and cannot allege, a class that can be certified."  (Dkt. entry no. 42, Def. Br. at 1, 11-12.)  Plaintiffs oppose Idea Village's motion.  (Dkt. entry no. 49, Pls. Opp'n.)

After Idea Village and Plaintiffs completed briefing on the instant motion to dismiss, Xacta 3000 filed a brief stating that it takes no position on the Rule 12(b)(6) issues raised by Idea Village.  (Dkt. entry no. 51, Xacta 3000 Resp. at 2.)  Xacta 3000 further urges that the Court should not entertain Idea Village's argument regarding class certification at this time because no motion to certify the class is pending, and the parties have not yet completed limited discovery on class certification issues. (Id. at 3-4.)

**DISCUSSION**

## I.    12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the 'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

Plaintiffs' NJCFA claim is subject to the heightened pleading standards of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Fed.R.Civ.P. 9(b); see Sheris v. Nissan N. Am., Inc., No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) ("[NJ]CFA claims sounding in fraud are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).") (quotation omitted).  The Amended Complaint alleges that Idea Village "undertook . . . unlawful actions to deceive consumers. . . . Idea Village also knowingly profited from the wrongful acts of Xacta 3000 through a business model which capitalized on the advertising and misrepresentations of others."  (Am. Compl. at ¶ 16 (emphasis added).)   Plaintiffs' NJCFA claim against Idea Village therefore "sounds in fraud." See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F.Supp.2d 494, 510 (D.N.J. 1999).

"The purpose of Rule 9(b) is to provide notice of the precise misconduct with which the defendants are charged and to prevent false or unsubstantiated charges." Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (internal quotation and citation omitted).  "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  The allegations also must include "who made a misrepresentation to whom and the

general content of the misrepresentation." <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004). If this specific information is not readily available, a plaintiff may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002) (quotation omitted).

## II.  Plaintiffs' New Jersey Consumer Fraud Act Claim

The NJCFA provides in relevant part:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or
> the knowing, concealment, suppression, or omission of
> any material fact with intent that others rely upon
> such concealment, suppression or omission, in
> connection with the sale or advertisement of any
> merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged
> thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2. The term "person" as used in the NJCFA includes, <u>inter alia</u>, natural persons, partnerships, corporations, companies, trusts, business entities and associations. N.J.S.A. § 56:8-1(d).

To state a NJCFA claim, a plaintiff must allege the following elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff[s]; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." <u>Bosland v. Warnock Dodge, Inc.</u>, 964 A.2d 741, 749 (N.J. 2009).

Unlawful practices under the NJCFA fall into three general
categories:  affirmative acts, knowing omissions, and regulation
violations.  <u>Frederico</u>, 507 F.3d at 202 (quotation omitted).
Intent to defraud is not necessary to show unlawful conduct by an
affirmative act of the defendant, but is an element of unlawful
practice by knowing omission of the defendant.  <u>See Torres-
Hernandez v. CVT Prepaid Solutions, Inc.</u>, No. 08-1057, 2008 WL
5381227, at *6 (D.N.J. Dec. 17, 2008).  Plaintiffs plead unlawful
conduct in the alternative:  "Defendants have engaged in
deceptive practices in the sale (whether direct or indirect) of
the Kinoki Pads, including falsely representing the health

benefits and attributes of the Kinoki Pads, or omitting to tell
the facts concerning the Kinoki Pads."  (Am. Compl. at ¶ 40.)

The Court finds that the allegations in the Amended
Complaint lack the requisite specificity – who, what, and where –
to sustain a cause of action under the NJCFA against Idea
Village.  First, Plaintiffs' allegations in support of its NJCFA
claim refer only to "Defendants," without distinguishing the
actions or omissions of Xacta 3000 from those of Idea Village.
(<u>See</u> <u>id.</u> at ¶¶ 40-44.)  Failure to inform each defendant as to
the specific fraudulent acts alleged against it contravenes the
pleading requirements of Rule 9(b).  <u>See</u> <u>Hale v. Stryker
Orthopedics</u>, No. 08-3367, 2009 WL 321579, at *6 (D.N.J. Feb. 9,

9

2009).  Second, the Amended Complaint makes specific allegations only as to the content of alleged misrepresentations made by Xacta 3000.  (Am. Compl. at ¶ 14.)  With regard to Idea Village, Plaintiffs state only that the packaging of the product "promised that Kinoki Pads would remove harmful toxins from [Kochamba's] body through her feet and provide other health benefits."  (Id. at ¶ 7.)  Merely referring to the product's purported purpose is insufficient to withstand a motion to dismiss under the NJCFA.  See Torres-Hernandez, 2008 WL 5381227, at *6.  Although the Amended Complaint refers to the packaging as containing "many of the same misleading themes and representations made in the advertising campaigns implemented by XACTA 3000," it fails to identify those allegedly "misleading themes and representations." (Am. Compl. at ¶ 16.)  The Amended Complaint similarly fails to identify with any specificity the "material facts" Idea Village allegedly omitted to disclose.  The only specific allegations as to Idea Village are the "where" – a Lake Geneva, Wisconsin Wal-Mart store – and the "when" – September 29, 2008.  (Id. at ¶ 7.)

Insofar as Plaintiffs attempt to impute Xacta 3000's advertising campaign to Idea Village because Idea Village's "As Seen on TV" business model depends on consumers relying on "general advertising campaigns implemented by others," the Amended Complaint does not allege that Kochamba ever saw an "infomercial" or other advertising campaign for Kinoki Pads.

10

(Id. at ¶ 9.)  Instead, Plaintiffs allege that Kochamba was
"convinced . . . to make the purchase" based on the packaging
itself and a highly visible pyramid display at her local Wal-Mart
store.  (Id. at ¶ 7.)  Thus, the Court will not attribute Xacta
3000's alleged specific misrepresentations to Idea Village on the
basis that Idea Village "knew, or should have known, that the
representations made regarding the Kinoki Pads were false."  (Id.
at ¶ 9.)[1]

        The only support for Plaintiffs' allegation that the
purported purpose and functioning of the Kinoki Pads is
"absolutely false" appears to be that Kochamba noticed her Kinoki
Pad change color when it came into contact with water.  (Id. at
¶¶ 1, 7.)  This allegation, taken as true, provides no factual
support for Plaintiffs' conclusory statements that Idea Village
engaged in misrepresentations and/or omissions of material fact.
Rather, Plaintiffs' allegations are "merely statements of a legal
conclusion" that the Kinoki Pads do not work as advertised.  See
Hoffman v. Hampshire Labs, Inc., 963 A.2d 849, 854 (N.J. App.
Div. 2009) (noting that plaintiff "did not plead specific facts
that would allow a fact-finder to draw" the conclusion that

---

[1] This would also preclude the Court from making a finding of a
causal nexus between the alleged unlawful practice (here, Idea
Village's business model) and any ascertainable loss.  See Dewey
v. Volkswagen AG, 558 F.Supp.2d 505, 526-27 (D.N.J. 2008).

distributor of non-prescription erectile dysfunction product made false promises regarding that product).

Because Plaintiffs have not stated a claim of unlawful conduct by Idea Village, the Court need not address the second or third elements of an NJCFA claim.  Even accepting Plaintiffs' allegations of ascertainable loss as true, in the absence of unlawful conduct the third element, causation, is lacking.  Count I of the Amended Complaint will be dismissed against Idea Village.

**III. Plaintiffs' Breach of Implied Warranty Claim**

Plaintiffs allege that the Kinoki Pads "are not fit for the ordinary and intended purpose of removing toxins from the body or providing other health benefits," concluding that Defendants breached the implied warranty of merchantability.  (Am. Compl. at ¶¶ 49, 52-53.)[2]  The warranty of merchantability is implied by law in every contract for the sale of goods.  In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig., No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009).

---

[2] Idea Village's brief in support of its motion sets forth the legal standard for, and cites a case dealing with, breach of implied warranty for a particular purpose.  (Def. Br. at 9-10.)  See Rait v. Sears, Roebuck & Co., No. 08-2461, 2009 WL 2488155 (D.N.J. Aug. 11, 2009) (dismissing claim for breach of implied warranty of fitness for a particular purpose, N.J.S.A. § 12A:2-315).  However, Count II, styled "Breach of Implied Warranty," indicates that it is predicated on a theory that the Kinoki Pads were not fit for their "ordinary and intended purpose," thus putting Defendants in breach of the implied warranties of merchantability.  (Am. Compl. at 14, ¶¶ 48-53.)

New Jersey's Uniform Commercial Code provides the cause of action for breach of the implied warranty of merchantability, stating in relevant part:

   (1)  [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

   (2)  Goods to be merchantable must be at least such as . . .

      (c)  are fit for the ordinary purposes for which such goods are used; and . . .

      (f)  conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2-314(1), (2)(c)&(f).  Thus, in order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended.  See <u>Altrionics of Bethlehem, Inc. v. Repco, Inc.</u>, 957 F.2d 1102, 1105 (3d Cir. 1992).

The Court notes as an initial matter that Plaintiffs do not allege the existence of any contract for the sale of Kinoki Pads between Idea Village and Kochamba.  Unlike Xacta 3000, which directly sells Kinoki Pads to consumers via its website and television "infomercials," Idea Village distributes Kinoki Pads to retail stores for sale to third-party consumers.  Despite the language of the statute, however, under New Jersey law, "a seller of goods, absent disclaimer, impliedly warrants that its goods are merchantable to all foreseeable, subsequent buyers." <u>Paramount Aviation Corp. v. Agusta</u>, 288 F.3d 67, 73 (3d Cir.

13

2002); see also Fashion Novelty Corp. of N.J. v. Cocker Mach. &
Foundry Co., 331 F.Supp. 960, 965 (D.N.J. 1971).  Because New
Jersey law permits a remote purchaser in the chain of commerce to
recover under an implied warranty, the lack of vertical privity
between Kochamba and Idea Village does not foreclose a cause of
action for breach of implied warranty.  Paramount Aviation Corp.,
288 F.3d at 74.

       In support of its contention that the Kinoki Pads are not
fit for their ordinary purpose of removing toxins from the body
and providing unidentified "other health benefits," Plaintiffs
allege that the Kinoki Pads are "worthless," "offer no health
benefits," and "have no effect on the removal of toxins from the
body," contrary to its promised effect.  (Pls. Opp'n at 14; Am.
Compl. at ¶¶ 1, 9, 15.)

       As discussed above with respect to Count I, allegations of
this nature are mere "naked assertion[s] devoid of further
factual enhancement" that will not suffice to survive a motion to
dismiss.  Iqbal, 129 S.Ct. at 1949 (internal quotation omitted)
(alteration in original).  Accordingly, Count II of the Amended
Complaint will be dismissed against Idea Village.

**IV.  Plaintiffs' Unjust Enrichment Claim**

       The Amended Complaint pleads, in the alternative to Counts I
and II, a claim for unjust enrichment.  (Am. Compl. at 15, ¶ 56.)
It is presented as a tort-based theory of recovery, in the

absence of any claim of an express or implied contract between
Idea Village and Kochamba.  (Id. at ¶¶ 56-59; see Pls. Opp'n at
15 ("Plaintiffs do not seek the imposition of a quasi-
contract.").)

New Jersey law does not recognize unjust enrichment as an
independent tort cause of action.  Torres-Hernandez, 2008 WL
5381227, at *9.  Rather, under New Jersey law,

> to establish unjust enrichment:  a plaintiff must show
> both that defendant received a benefit and that
> retention of that benefit without payment would be
> unjust.  The unjust enrichment doctrine requires that
> plaintiff show that it expected remuneration from the
> defendant at the time it performed or conferred a
> benefit on defendant and that the failure of
> remuneration enriched defendant beyond its contractual
> rights.

Va. Sur. Co. v. Macedo, No. 08-5586, 2009 WL 3230909, at *11
(D.N.J. Sept. 30, 2009); see also VRG Corp. v. GKN Realty Corp.,
641 A.2d 519, 526 (N.J. 1994).

The Amended Complaint makes clear that Kochamba had no
expectation of remuneration from Idea Village at the time she
allegedly conferred a benefit on Idea Village by purchasing the
Kinoki Pads.  Therefore, Plaintiffs have not stated a claim for
unjust enrichment against Idea Village.  See Cafaro v. HMC, No.
07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008).

A claim of unjust enrichment also requires that the
plaintiff allege a sufficiently direct relationship with the
defendant to support the claim.  See Maniscalco v. Brother Int'l

15

Corp. (USA), 627 F.Supp.2d 494, 505-06 (D.N.J. 2009) (dismissing unjust enrichment claims brought by purchasers of all-in-one printer devices against printer manufacturer, because plaintiffs did not allege that they purchased the printers from the defendant manufacturer, but rather conceded to have purchased the printers from a third-party national retail chain).  Such a direct relationship is lacking here.  Plaintiffs allege that Kochamba purchased the Kinoki Pads at a Wal-Mart store, not from Idea Village.  Thus, Plaintiffs' unjust enrichment claim against Idea Village fails under New Jersey law.  Cooper v. Samsung Elec. Am., Inc., No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) ("[A]lthough [plaintiff] alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through [plaintiff's] purchase, as the purchase was through a retailer, Ultimate Electronics.").  Count III of the Amended Complaint will be dismissed against Idea Village.

## CONCLUSION

For the reasons discussed supra, Counts I, II, and III will be dismissed without prejudice as against Idea Village. Plaintiffs will be given leave to file a Second Amended Complaint within thirty days of the entry of the accompanying Order.

Because no motion for class certification is pending at this time, class discovery is not yet complete, and Plaintiffs will be

given leave to amend file a Second Amended Complaint, the Court declines to address the parties' arguments regarding the feasibility of certification of the proposed "Idea Village Class" at this time.   See Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (noting that class action allegations should be dismissed at the 12(b)(6) stage, prior to a motion for class certification, only "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").

The Court will issue an appropriate Order.


      s/ Mary L. Cooper      
**MARY L. COOPER**
United States District Judge

Dated:    November 23, 2009