**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
CYNTHIA NELSON, et al.,           :
                                  : CIVIL ACTION NO. 08-5426 (MLC)
      Plaintiffs,                 :
                                  :   MEMORANDUM OPINION
      v.                          :
                                  :
XACTA 3000 INC., et al.,          :
                                  :
      Defendants.                 :
_____    :
```

**COOPER, District Judge**

　　Plaintiffs, Cynthia Nelson and Barbara L. Kochamba
(collectively, "Plaintiffs"), commenced this putative class
action against defendants, Xacta 3000, Inc. ("Xacta 3000"), and
Idea Village Products Corp. ("Idea Village") (collectively,
"Defendants"), alleging violations of the New Jersey Consumer
Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et seq. (Count I), breach
of implied warranty (Count II), and unjust enrichment (Count
III).  (Dkt. entry no. 32, First Am. Class Action Compl.)  The
Court granted Idea Village's motion to dismiss the claims against
it pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)
on November 24, 2009, and granted Plaintiffs leave to file a
second amended complaint.  (Dkt. entry no. 53, 11-24-09 Mem. Op.;
dkt. entry no. 54, 11-24-09 Order.)  Plaintiffs filed a Second
Amended Complaint thereafter.  (Dkt. entry no. 55, 2d Am. Compl.)

　　The Second Amended Complaint alleges the same three counts
as the Amended Complaint.  (2d Am. Compl. at ¶¶ 39-64.)

Plaintiffs assert that this Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), alleging minimal diversity and an amount in controversy exceeding $5,000,000. (Id. at ¶ 14.)  Plaintiffs propose a nationwide class comprising all purchasers of "Kinoki Pads."  (Id. at ¶¶ 16, 31.)

Idea Village now moves to dismiss the claims asserted against it in the Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).  (Dkt. entry no. 58, Mot. to Dismiss 2d Am. Compl.) The Court decides the motion on the submissions of the parties, without oral argument, pursuant to Rule 78.  For the reasons stated herein, the motion will be granted in part and denied in part.

<b>BACKGROUND</b>

The facts giving rise to this action are recited in the Second Amended Complaint as follows.  Nelson is a citizen of California; Kochamba is a citizen of Wisconsin; Xacta 3000 and Idea Village are New Jersey corporations with their principal places of business in New Jersey.  (2d Am. Compl. at ¶¶ 6-7, 11-12.)  Xacta 3000 markets a product called "Kinoki Detox Foot Pads" ("Kinoki Pads") and sells the same through its website and using television "infomercials."  (Id. at ¶¶ 1, 6, 11, 18.)  Idea Village is a distributor of retail products specializing in products branded "As Seen on TV," and distributes the Kinoki Pads

2

(labeled "Kinoki Cleansing Detox Foot Pads") to retail stores. (Id. at ¶¶ 8, 12.)

Kinoki Pads "purport to provide health benefits to consumers who use them by taping the Pads to the soles of their feet overnight," including "remov[ing] toxins from the body by 'absorb[ing] impurities' and 'assisting your body in the removal of heavy metals, metabolic wastes, toxins, microscopic parasites, mucous, chemicals, and cellulite.'"  (Id. at ¶ 1.)  Plaintiffs allege that these and other claims "regarding the purported ability of the Kinoki Pads to removed [sic] toxins and impurities from the body are absolutely false."  (Id.)  Plaintiffs contend that Defendants represented in their advertising "that consumers can visually see that the Kinoki Pads are working as intended because the Pads change colors (from white to a darker hue) during use."  (Id. at ¶ 2.)  Plaintiffs assert that Defendants "knew, or should have known, [that] any change in color in the Pads is not, in any way, attributable to the removal of toxins or impurities.  Rather, the Kinoki Pads change color as a result of (1) their contact with the air itself; and (2) moisture (such as sweat) that comes into contact with the Pads during use."  (Id.)

Nelson alleges that she saw a Kinoki Pads "infomercial" on television and was convinced to purchase the product, which she did by accessing Xacta 3000's website, www.buykinoki.com, on March 27, 2008.  (Id. at ¶ 6.)  Nelson "used the Kinoki Pads

3

precisely as directed for ten to twelve days," but determined
that the Kinoki Pads "continually turned a dark color over
night," contrary to the claims in the infomercial that they would
eventually remain clear because use of the Kinoki Pads had
removed harmful toxins.  (Id.)  Nelson states that she "correctly
determined that the Pads would always turn dark during
application . . . because the product had no efficacy and the
color change with the Pads did not bear any correlation
whatsoever to the purported removal of toxins and impurities from
her body."  (Id.)  Nelson seeks to represent a class of similarly
situated persons that Plaintiffs would define as "All persons who
purchased Kinoki Pads within the United States, not for resale or
assignment, from XACTA 3000."  (Id. at ¶ 31.)

    Kochamba alleges that "in or about October 2008" she saw the
Kinoki Pads infomercial, "which was funded and paid for by XACTA
3000."  (Id. at ¶ 7.)  "Approximately one month later, on
September 29, 2008," Kochamba came across a four-by-four foot
display of Kinoki Pads at a Wal-Mart store in Lake Geneva,
Wisconsin, and stopped to review the display and representations
on the packaging "as a result of having previously seen the XACTA
3000 commercial."  (Id. at ¶¶ 7-8.)[1]  Kochamba was convinced by

---

[1] Plaintiffs characterize this chronological discrepancy as a
typographical error in their opposition brief, stating:
"Paragraph 7 of the [Second Amended Complaint] should read
'August 2008' instead of 'October 2008.'" (Dkt. entry no. 61,
Pls. Opp'n, at 5 n.2.)  The Court will grant Plaintiffs leave to
amend to address this typographical error. Fed.R.Civ.P. 15(a)(2).

the display and "packaging advertisement," which she recalled as consistent with the claims made in the infomercial, to purchase the product.  (Id.)  Kochamba states that "the product packaging included pictures showing that the Pads were white before use and discolored (dark) after use, thereby expressly and impliedly representing that the Pads turned a dark color as a result of the removal of toxins and impurities from the body during normal use and application."  (Id.)

Kochamba used the Kinoki Pads as directed for approximately four days, until she noticed that "when water was accidentally dropped on a Kinoki Pad, it became discolored in the same manner as when she applied the product to her feet at night and removed the Pads as directed the next morning."  (Id. at ¶ 9.)  Kochamba thus concluded that "the Pads did not have any efficacy and . . . stopped using the product."  (Id.)

Plaintiffs allege that the Kinoki Pads purchased by Kochamba "were distributed to Wal-Mart by Idea Village, with the intent that consumers, such as Kochamba, would rely upon the representations made on the packaging itself, as well as the advertising campaign orchestrated and implemented by XACTA 3000. . . ."  (Id. at ¶ 10.)  Kochamba seeks to represent a class Plaintiffs would define as "All persons who purchased Kinoki Pads within the United States, not for resale or assignment, from a retail store" ("Idea Village Class").  (Id. at ¶ 31.)

Plaintiffs allege that Xacta 3000 "has marketed Kinoki Pads utilizing numerous false and misleading representations and statements, including the following:

- Use of Kinoki Pads is the "natural way to assist your body in the removal of heavy metals, metabolic wastes, toxins, microscopic parasites, mucous, chemicals, cellulite and much more;"
- Kinoki Pads provide the "one-two punch of powerful detox ingredients in conjunction with tourmaline, a mineral that generates negative ions, to improve your overall health and well-being;"
- Kinoki Pads "use all-natural tree extracts and negative ions to rid your body of toxins;"
- Kinoki Pads "absorb toxins released by the body;"
- Kinoki Pads "relieve burdens on the immune system;"
- Kinoki Pads "assist in the natural cleansing of the lymphatic system;"
- Kinoki Pads "support normal blood circulation;"
- Kinoki Pads "boost your energy level;"
- Kinoki Pads "improve your Health and Wellness;"
- Use of Kinoki Pads "is the all-natural way to collect harmful toxins from your body while you sleep . . . ;"
- [A]n "independent study" shows that Kinoki™ Detox Kinoki Pads eliminate toxins in the body;
- "Lab results" prove that Kinoki Pads aid in the elimination of toxins;
- Kinoki Pads are perfect for "Diabetes – Arthritis – Fatigue – High Blood Pressure – Insomnia – Weight Loss;" and
- Kinoki Pads are "FDA registered."

(Id. at ¶ 18.)

The packaging on the Kinoki Pads distributed by Idea Village contain similar, but less specific, claims that the Pads would "Absorb[] Impurities," "Aid[] Natural Cleansing," and "Work[] while you Sleep."  (Id. at ¶ 20.)  Plaintiffs note that Idea

6

Village's packaging of the Kinoki Pads shows pictures of white "before use" Pads and dark "after use" Pads, "thereby expressly and impliedly representing that the Pads turn a dark color as a result of the removal of toxins and impurities from the body during normal use and application." (Id. at ¶ 20.)  Plaintiffs further contend that "[a]ll of these representations . . . are demonstrably false," and that the ingredients in Kinoki Pads, including Bamboo Vinegar, Tourmaline, and Detox Herbs, have no effect on the removal of toxins from the body, nor do they provide the other health benefits promised.  (Id. at ¶¶ 19-20.)

Plaintiffs would impute Xacta 3000's representations to Idea Village on the basis that

> Idea Village, by promoting its "As Seen on TV" campaign intended and understood that consumers, having seen and relied upon not only the point-of-purchase advertising and packaging propagated by Idea Village, but also in conjunction with the false and misleading representations made by XACTA 3000 regarding the Pads, would purchase the Kinoki Pads that it distributed to major retailers (such as Wal-Mart).  Thus, Idea Village's business model intentionally and deliberately profited from Idea Village's wrongful acts, as well as the wrongful acts of XACTA 3000, which wrongful acts Idea Village knew and intended would cause consumers to purchase the Kinoki Pads distributed by Idea Village.

(Id. at ¶ 21.)  Idea Village points out that Plaintiffs do not, and cannot, allege that Idea Village's Kinoki Pads packaging said "As Seen on TV" or that Idea Village's product "was actually

located in the 'As Seen on TV' section of the Wal-Mart when
Kochamba purchased it."  (Dkt. entry no. 58, Idea Village Br. at
5.)

        Idea Village now moves to dismiss Plaintiffs' NJCFA, breach
of implied warranty, and unjust enrichment claims asserted
against it in the Second Amended Complaint.  (Dkt. entry no. 58,
Mot. to Dismiss & Idea Village Br.)  Idea Village contends that
the Second Amended Complaint should be dismissed because (1) it
does not allege with specificity the elements of a NJCFA claim,
and does not "identify what was false about any representations
that Ideavillage [sic] made, but instead tr[ies] to hold
Ideavillage liable for the alleged false advertising of . . .
Xacta 3000," (2) Plaintiffs fail to allege sufficient facts to
establish that the Kinoki Pads are unfit for their intended
purpose, and (3) Plaintiffs did not alter or amend their unjust
enrichment claim, which this Court previously dismissed because
no independent tort cause of action for unjust enrichment exists
under New Jersey law.  (Idea Village Br. at 1-2.)

        Idea Village argues that Plaintiffs' continued pursuit of
this action, particularly their unjust enrichment claim,
evidences Plaintiffs' bad faith, and seeks an order requiring
Plaintiffs to pay the costs, expenses, and attorneys' fees
incurred by Idea Village because of this "unreasonabl[e] and
vexatious[]" conduct, pursuant to 28 U.S.C. § 1927.  (Id.)  Idea

Village further argues that the Second Amended Complaint should be dismissed with prejudice "because Plaintiffs have already had multiple chances to amend their Complaint . . . and any amendment to the Complaint would be futile."  (Idea Village Br. at 2.) Plaintiffs oppose Idea Village's motion to dismiss the Second Amended Complaint.  (Dkt. entry no. 61, Pls. Opp'n.)

## DISCUSSION

## I.    12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the

'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

Plaintiffs' NJCFA claim is subject to the heightened pleading standards of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); see Sheris v. Nissan N. Am., Inc., No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) ("[NJ]CFA claims sounding in fraud are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).") (quotation omitted).  The Second Amended Complaint alleges that Idea Village "undertook . . . unlawful actions to deceive consumers . . . by promoting its 'As Seen on TV' campaign . . . in conjunction with the false and misleading representations made by XACTA 3000 regarding the pads. . . ." (2d Am. Compl. at ¶ 21.)  Plaintiffs' NJCFA claim against Idea Village therefore "sounds in fraud."  See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F.Supp.2d 494, 510 (D.N.J. 1999).

"The purpose of Rule 9(b) is to provide notice of the precise misconduct with which the defendants are charged and to prevent false or unsubstantiated charges." Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (internal quotation and citation omitted).  "To satisfy this standard, the

10

plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).  The allegations also must include "who made a misrepresentation to whom and the general content of the misrepresentation." <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 224 (3d Cir. 2004).  If this specific information is not readily available, a plaintiff may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002) (quotation omitted).

## II.  Plaintiffs' New Jersey Consumer Fraud Act Claim

The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.  The term "person" as used in the NJCFA includes, <u>inter alia</u>, natural persons, partnerships, corporations, companies, trusts, business entities and associations.  N.J.S.A. § 56:8-1(d).

To state a NJCFA claim, a plaintiff must allege the following elements:  "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff[s]; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009).

Unlawful practices under the NJCFA fall into three general categories:  affirmative acts, knowing omissions, and regulation violations.  Frederico, 507 F.3d at 202 (quotation omitted). Intent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant.  See Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).  Plaintiffs plead unlawful conduct in the alternative:

> Defendants have engaged in deceptive practices in the sale (whether direct or indirect) of the Kinoki Pads, including falsely representing that the Pads remove toxins and impurities from the body and also representing that the Pads provide additional health benefits.  Each of these representations was false because . . . the Pads do not have any efficacy and do not remove toxins and impurities from the body or provide any of the other purported health benefits represented by Defendants.
>
> Defendants also failed to disclose material facts regarding the Pads to Plaintiffs . . . namely, that the Pads do not have any efficacy and do not remove toxins and impurities from the body or provide any of the other purported health benefits represented by Defendants.

(2d Am. Compl. at ¶¶ 45-46.)

12

Plaintiffs' allegations in support of the NJCFA claim suffer from a defect previously noted by the Court in dismissing this claim in the November 24, 2009 Memorandum Opinion:  they refer only to "Defendants," without distinguishing the actions or omissions of Xacta 3000 from those of Idea Village.  (See id. at ¶¶ 45-50; 11-24-09 Mem. Op. at 9.)  Failure to inform each defendant as to the specific fraudulent acts alleged against it contravenes the pleading requirements of Rule 9(b).  See Hale v. Stryker Orthopedics, No. 08-3367, 2009 WL 321579, at *6 (D.N.J. Feb. 9, 2009).  We decline at this juncture to impute the content of Xacta 3000's advertising campaign to Idea Village.[2]

The Second Amended Complaint alleges as to Idea Village specifically (as opposed to "Defendants") that Idea Village made representations on the product packaging that the Kinoki Pads would "Absorb[] Impurities," "Aid[] Natural Cleansing," and "Work[] while you Sleep," and that the packaging includes pictures "showing that the Pads were white before use and discolored (dark) after use."  (2d Am. Compl. at ¶ 8.)

---

[2] The authority cited by Plaintiffs in support of their proposition that the Court should impute Xacta 3000's advertising campaign to Idea Village by reason of Idea Village's business model are inapposite, as those cases involve NJCFA claims alleging misrepresentations made by the defendant directly, rather than a third party.  (Dkt. entry no. 61, Pls. Opp'n at 13.)  See Harper v. LG Elecs., USA, Inc., 595 F.Supp.2d 486, 491 (D.N.J. 2009); Sheris, 2008 WL 2354908, at *7.  As discussed herein, imputation of Xacta 3000's advertising campaign is unnecessary to the Court's resolution of Idea Village's motion to dismiss the NJCFA claim.

Plaintiffs contend that these representations are false because "Kochamba noticed that, when water was accidentally dropped on a Kinoki Pad, it became discolored in the same manner as when she [used the product as directed]. . . . As a result, Kochamba correctly determined that the Pads did not have any efficacy." (Id. at ¶ 9.)  We find that this constitutes sufficient factual support for Plaintiffs' claim that Idea Village engaged in deceptive sales practices by misrepresenting the efficacy of the Kinoki Pads.

Plaintiffs allege an ascertainable loss of the purchase price of the Kinoki Pads purchased by Kochamba by claiming that the Kinoki Pads "do not work when consumers apply them while they sleep (or during any other time of the day or night for that matter)."  (2d Am. Compl. at ¶ 20.)  Cf. Hoffman v. Hampshire Labs, Inc., 963 A.2d 849, 854 (N.J. Super. 2009) (holding that plaintiff had not shown ascertainable loss to state NJCFA claim because plaintiff had "not alleged that he used the product and it failed").  Here, Kochamba alleges that she used the Kinoki Pads, and determined that they did not have any efficacy upon observing that the Kinoki Pads turned dark when in contact with water, which according to the product packaging was supposed to be the indicator of efficacy.  (2d Am. Compl. at ¶¶ 8-9.)[3]

---

[3] The Second Amended Complaint does not allege the specific purchase price of a package of Kinoki Pads; however, the approximate price is presumably known to all parties and the Prayer for Relief specifically seeks, inter alia, "the amounts

14

Plaintiffs satisfy their pleading burden as to the causation element of a NJCFA claim by alleging that Kochamba purchased the Kinoki Pads in reliance on, <u>inter alia</u>, "the representations on Idea Village's product packaging" that the Kinoki Pads would "Absorb[] Impurities," "Aid[] Natural Cleansing," and "Work[] while you Sleep."  (2d Am. Compl. at ¶ 8.)  <u>See</u> <u>Solo v. Bed Bath & Beyond</u>, No. 06-1908, 2007 WL 1237825, at *4 (D.N.J. Apr. 26, 2007) ("The [NJ]CFA does not require that the misrepresentation have been the sole cause of Plaintiff's damages, but merely that it be a cause."); <u>see also</u> <u>id.</u> (stating that "[a]dequate explanations [of causation] would include a statement by Plaintiff indicating that Plaintiff purchased" the product because of the representations on the product packaging).

We therefore find that the factual allegations in the Second Amended Complaint are sufficiently detailed to put Idea Village on notice of the misconduct with which it is charged:  falsely representing on the product packaging, through images and written promises of efficacy, that the Kinoki Pads change color because they absorb impurities through the feet, rather than contact with moisture.  <u>See</u> <u>Rolo</u>, 155 F.3d at 658.  The Second Amended Complaint also alleges in sufficient detail the time and place of

---

paid for the defective Kinoki Pads."  (2d Am. Compl. at 20.)  <u>See</u> <u>Torres-Hernandez</u>, 2008 WL 5381227, at *7 n.3 ("A sufficiently plead [sic] ascertainable loss is one with enough specificity as to give the defendant notice of possible damages.").  A specific dollar amount is not required by Rule 9(b).  <u>Id.</u>

the alleged fraud (a Wal-Mart in Wisconsin on September 29, 2008), ascertainable loss (the cost of the Kinoki Pads), and causation (the representations on the packaging), so as to meet the heightened pleading burden of a NJCFA claim.  Accordingly, we will deny Idea Village's motion to dismiss as to Count I.

### III. Plaintiffs' Breach of Implied Warranty Claim

Plaintiffs allege that the Kinoki Pads "are not fit for the ordinary and intended purpose of removing toxins and impurities from the body or providing other health benefits," concluding that Defendants breached the implied warranty of merchantability. (2d Am. Compl. at ¶¶ 54-58.)  The warranty of merchantability is implied by law in every contract for the sale of goods.  In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009).

New Jersey's Uniform Commercial Code provides the cause of action for breach of the implied warranty of merchantability, stating in relevant part:

> (1)  [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
> (2)  Goods to be merchantable must be at least such as . . .
>      (c)  are fit for the ordinary purposes for which such goods are used; and . . .
>      (f)  conform to the promises or affirmations of fact made on the container or label if any.

16

N.J.S.A. § 12A:2-314(1), (2)(c)&(f).  Thus, in order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended.  See Altrionics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

The Second Amended Complaint alleges no contractual relationship between Kochamba and Idea Village, but identifies Idea Village as the distributor of the Kinoki Pads purchased at a Wal-Mart retail store.  Under New Jersey law, "a seller of goods, absent disclaimer, impliedly warrants that its goods are merchantable to all foreseeable, subsequent buyers."  Paramount Aviation Corp. v. Agusta, 288 F.3d 67, 73 (3d Cir. 2002); see also Fashion Novelty Corp. of N.J. v. Cocker Mach. & Foundry Co., 331 F.Supp. 960, 965 (D.N.J. 1971).  Because New Jersey law permits a remote purchaser in the chain of commerce to recover under an implied warranty, the lack of vertical privity between Kochamba and Idea Village does not foreclose a cause of action for breach of implied warranty.  Paramount Aviation Corp., 288 F.3d at 74.

As discussed above with respect to Count I, Plaintiffs allege that Idea Village warranted, by representing on the product packaging, that the Kinoki Pads would "Absorb[] Impurities," "Aid[] Natural Cleansing," and "Work[] while you Sleep."  (2d Am. Compl. at ¶ 8.)  Plaintiffs allege that the

Kinoki Pads "are not fit for the ordinary and intended purpose of removing toxins and impurities from the body or providing other health benefits."  (Id. at ¶ 55.)  Idea Village contends that the representations on the packaging do not equate to a claim that its Kinoki Pads would "remove toxins," and in the alternative that Plaintiffs did not provide factual allegations supporting its conclusion that the Kinoki Pads did not "Absorb[] Impurities," "Aid[] Natural Cleansing," and "Work[] while you Sleep."  (Idea Village Br. at 16; dkt. entry no. 62, Idea Village Reply Br. at 10.)

Plaintiffs alleged unequivocally that the Kinoki Pads "do not . . . remove toxins or impurities from the body, do not aid natural cleansing of the body and do not work when consumers apply them. . . ."  (2d Am. Compl. at ¶ 20.)  This allegation directly addresses the representations made by Idea Village on the Kinoki Pads packaging.  Plaintiffs factually support this claim by explaining that Kochamba expected the change in color of the pads to be the sign of efficacy, based on images on the product packaging, but determined when a Kinoki Pad accidentally came into contact with water that the Kinoki Pads did not have any efficacy.  (Id. at ¶ 8.)  These factual allegations, while minimal, state a plausible claim that the Kinoki Pads do not work as advertised on the product packaging, by suggesting that the

color change is due to the presence of moisture rather than the absorption of impurities through the feet during sleep.

Accordingly, the Court will deny Idea Village's motion to dismiss Count II.

## IV.  Plaintiffs' Unjust Enrichment Claim

Count III of the Second Amended Complaint pleads, in the alternative to Counts I and II, a claim for unjust enrichment. (2d Am. Compl. at ¶ 61.)  Count III as pleaded in the Second Amended Complaint is identical to Count III as pleaded in the Amended Complaint, which the Court previously dismissed because New Jersey does not recognize unjust enrichment as an independent tort cause of action, and Plaintiffs averred in their opposition to Idea Village's motion to dismiss the Amended Complaint that "Plaintiffs do not seek the imposition of a quasi-contract." (11-24-09 Mem. Op. at 14-16; dkt. entry no. 49, Pls. Opp'n to Mot. to Dismiss, at 15.)  See Torres-Hernandez, 2008 WL 5381227, at *9.

The same reasons given by the Court in the November 24, 2009 Memorandum Opinion for dismissal of the unjust enrichment claim against Idea Village still apply.  (See 11-24-09 Mem. Op. at 14-16.)  Plaintiffs' brief in opposition to the instant motion did not address the Court's previous discussion of case law holding that a plaintiff may only bring an unjust enrichment claim against a party with whom a sufficiently direct relationship

19

exists.  (See id. at 15-16.)  Because Plaintiffs did not avail themselves of the opportunity to amend Count III, the Court will grant Idea Village's motion to dismiss Count III as against it with prejudice.

## V.   Idea Village's Request for Sanctions

Idea Village requests that Plaintiffs be ordered "to pay for the excess costs, expenses, and attorney's fees that Ideavillage has incurred for Plaintiffs' violation of 28 U.S.C. § 1927." (Idea Village Br. at 19.)  Idea Village contends such an award is appropriate because Plaintiffs, by re-filing their "deficient" claims, required Idea Village to pay attorneys' fees and costs it would not have otherwise incurred to defeat claims that the Court previously dismissed.  (Id.)  In particular, Idea Village points to Plaintiffs' unjust enrichment claim as a basis for imposing sanctions for Plaintiffs' alleged bad faith.  (Id.)

28 U.S.C. § 1927 provides that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under this statute are appropriate in "those situations where an attorney has:  (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct."  Veneziano v.

20

Long Island Pipe Fabrication & Supply Corp., 238 F.Supp.2d 683,
693 (D.N.J. 2002) (citing LaSalle Nat'l Bank v. First Conn.
Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002)).  A court
may not impose sanctions under this section "absent a finding
that counsel's conduct resulted from bad faith, rather than
misunderstanding, bad judgment, or well-intentioned zeal."
LaSalle Nat'l Bank, 287 F.2d at 289.  Once a finding of bad faith
has been made, the appropriateness of assessing attorneys' fees
against counsel under this section is within the district court's
discretion.  Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir.
1986).

We cannot find that Plaintiffs' failure to amend the unjust
enrichment claim "multiplie[d] the proceedings" as required under
the statute.  The Court's November 24, 2009 Order granted
Plaintiffs leave to file a second amended complaint, and the
Court has determined herein that Plaintiffs' amendments to the
first two causes of action have resulted in a pleading sufficient
to survive Idea Village's instant motion to dismiss.  Idea
Village was therefore obliged by the Court's earlier ruling,
rather than any action undertaken in bad faith by Plaintiffs, to
respond in some manner to the Second Amended Complaint.  The fact
that Plaintiffs failed to amend the unjust enrichment claim and
proffered meritless arguments that disregard the Court's earlier
holdings in its opposition to the instant motion to dismiss,

while demonstrating poor judgment, simply did not multiply the proceedings.  (<u>See</u> Pls. Opp'n at 19-20.)  Idea Village's request for costs, expenses, and attorneys' fees incurred as a result of filing its motion to dismiss the Second Amended Complaint will be denied.

**CONCLUSION**

For the reasons discussed <u>supra</u>, Count III of the Second Amended Complaint will be dismissed with prejudice as against Idea Village.  Idea Village's motion to dismiss Counts I and II of the Second Amended Complaint will be denied.  Plaintiffs will be given leave to file a Third Amended Complaint for the limited purpose of (1) remedying the typographical error in paragraph 7 of the Second Amended Complaint by changing "October 2008" to "August 2008," and (2) removing all references to "Defendants" in Count III, consistent with this Court's dismissal of that claim as to Idea Village.

The Court will issue an appropriate Order.

            s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:   May 12, 2010

22